UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
_____

PATRICK ANDREW HART, individually and on
behalf of all others similarly situated,

    Plaintiff,

vs.                                                 Case No.:  2:10-cv-855-WHA

GUARDIAN CREDIT UNION,

    Defendant.
_____

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**
_____

Comes now the Plaintiff, Patrick Andrew Hart ("Plaintiff"), by and through undersigned counsel, and hereby files this Memorandum in support of his Motion for Class Certification. Defendant does not oppose the motion.

**I.
INTRODUCTION**

This is a case under 15 U.S.C. § 1693 *et seq.*, commonly known as the Electronic Fund Transfer Act ("EFTA"), which, among other things, regulates notices on automatic teller machines ("ATM"). EFTA provides that an ATM operator must place an actual physical notice concerning transaction fees in a conspicuous location on or at the ATMs in question. In this case there was no physical notice at the Defendant's ATMs. Therefore, Defendant could not lawfully assess a fee for using the ATMs. As demonstrated below, all the elements of Rule 23 are met and the Court should certify the class of persons charged such a fee by Defendant during the class period.

1

Defendant Guardian Credit Union ("Guardian" or "Defendant"), is the owner and operator of ATMs located at 1789 Congressman Dickson Drive, Montgomery AL 36109 and 402 Washington Street, Prattville, AL 36067 (collectively the "Guardian ATMs").  In July, 2010, Plaintiff used one of the ATMs in order to withdraw cash electronically.  (*See* Declaration of Patrick Hart ("Hart Decl.") attached hereto as Exhibit A.)  At that time, the Guardian ATMs did not have the fee notice affixed to them, or in close proximity to them informing consumers that the use of the Guardian ATMs will or may result in an ATM surcharge.  Plaintiff was charged a $2.00 ATM surcharge fee for withdrawing cash from a Guardian ATM.  (*See* Plaintiff's ATM receipt attached hereto as Exhibit C) (*see also* Exhibit A, Hart Decl. ¶ 6).

Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant based on Defendant's violation of the EFTA.  Plaintiff seeks, on behalf of himself and the proposed class, statutory damages, costs and attorney's fees, all of which are expressly made available by statute, 15 U.S.C. § 1693m.

## II.
## BACKGROUND

A.  **Electronic Funds Transfer Act**

1. "Electronic funds transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes . . . automated teller machine transactions . . . ." 15 U.S.C. § 1693a(6); *see also* 12 C.F.R. § 205.3(b).

2. Defendant is an "automated teller machine operator" as that term is defined by 12 C.F.R. § 205.16(a), which states: "Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or

2

a balance inquiry and that does not hold the account to or from which the transfer is made, or about which an inquiry is made."

    3.    15 U.S.C. § 1693b(d)(3)(A) and (B), and the implementing regulation, 12 C.F.R. § 205.16(b) and (c), require an ATM operator who imposes a fee on a consumer for "host transfer services" (an electronic fund transfer or a balance inquiry) to provide notice to the consumer of the fee before the consumer is committed to the transaction. Specifically, 12 C.F.R. § 205.16(b) states:

> *General.* An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
> (1)    Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2)    Disclose the amount of the fee.

    4.    15 U.S.C. § 1693b(d)(3)(B), and its implementing regulation, 12 C.F.R. § 205.16(c), specifies the notice to be provided to consumers. 12 C.F.R. § 205.16(c) states:

> (c)    *Notice requirement.* To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:
>
> > (1)    *On the machine.* Post in a prominent and conspicuous location on or at the automated teller machine a notice that:
> >
> > > (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or
> > >
> > > (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and

>    (2)   *Screen or paper notice.* Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

5.   Pursuant to this regulation, the notice physically attached to the ATM must comply with 12 C.F.R. § 205.16(c), either by stating that a fee will be imposed, or if there are circumstances in which a fee will not be imposed, that a fee may be imposed.

6.   15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R. § 205.16(e), provide that no fee may be imposed by an ATM operating in connection with any electronic fund transfer initiated by a consumer for which a notice is required *unless* the consumer is provided the notices required pursuant to 12 C.F.R. § 205.16(c). Specifically, 15 U.S.C. § 1693b(d)(3)(C) states in relevant part:

>    (C) **Prohibition on fees not properly disclosed and explicitly assumed by consumer.** No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless – (i) the consumer receives such notice in accordance with subparagraph (B); and (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

Similarly, 12 C.F.R. § 205.16(e) provides that:

>    (e) *Imposition of fee.* An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if
>
>    (1) The consumer is provided the notices required under paragraph (c) of this section, and
>
>    (2) The consumer elects to continue the transaction or inquiry after receiving such notices.

7. In connection with 2006 amendments to the EFTA, the Board of Governors of the Federal Reserve published its Final Rule and official staff interpretation which, *inter alia*, explained the EFTA's disclosure requirements as follows:

> The final rule clarifies the **two-part disclosure scheme established in Section 904(d)(3)(B) of the EFTA. The first disclosure, on ATM signage posted on or at the ATM, allows consumers to identify quickly ATMs that generally charge a fee for use. This disclosure is not intended to provide a complete disclosure of the fees associated with the particular type of transaction the consumer seeks to conduct.** Until a consumer uses his or her card at an ATM, the ATM operator does not know whether a surcharge will be imposed for that particular consumer. Rather, it is the second, more specific disclosure, made either on the ATM screen or an ATM receipt, that informs the customer before he or she is committed to the transactions whether, in fact, a fee will be imposed for the transaction and the amount of the fee….

71 .R. 1638, 1656 (emphasis added).

8. Thus, the statute and regulation require that a physical notice must be displayed informing consumers that the ATM imposes a surcharge and that the ATM screen must definitively state that a fee will be imposed, before that fee is imposed. The EFTA imposes strict liability upon ATM operators that fail to comply with its disclosure requirements. *See Burns v. First American Bank*, 2006 WL 3754820, *6 (N.D. Ill. Dec. 19, 2006). (Attached hereto as Exhibit B) A plaintiff seeking statutory damages under the EFTA need not prove that he or she sustained any actual financial loss, or that he or she relied upon the lack of mandatory disclosure as an inducement to enter into a transaction. *Burns*, 2006 WL 3754820, *6 ("Section 1693b(d)(3) prohibits an ATM operator from charging a fee unless it provides notice of its fee on the machine and on the screen, period, no mention of a necessary scienter.") The notice referenced in 15 U.S.C. § 1693f has no arguable applicability to Plaintiff's claims because, among other things, Plaintiff is not an account holder of Defendant.

5

**B.     Defendant's Conduct**

9.    Defendant Guardian is an ATM operator regulated under the EFTA, 15 U.S.C. § 1693 *et seq.* and 12 C.F.R. Part 205 (Regulation E), as that term is defined in 12 C.F.R. § 205.16(a).  (Complaint ¶ 21).  Defendant operates the Guardian ATMs.  The Guardian ATMs permit consumers to perform electronic fund transfers, as defined in 12 C.F.R. § 205.3.  The Guardian ATMs impose a fee on consumers who withdraw cash from the ATMs.

10.    Defendant failed to post on or at the Guardian ATMs a notice that a fee will be imposed for withdrawing cash or for a balance inquiry, resulting in Defendant's improper imposition of a fee to users of the Guardian ATMs.  Defendant's failure to post the required notice on or at the Guardian ATMs has resulted in frequent and persistent non-compliance with the EFTA.  These violations of the EFTA have adversely affected hundreds of consumers.  Despite knowing of the ATM fee notice provisions of the EFTA, Defendant has violated the EFTA by failing to post the required ATM fee notice at the Guardian ATMs and improperly imposing ATM fees.  Defendant's non-compliance with the ATM fee notice requirements of the EFTA, and subsequent imposition of a fee, did not result from a bona fide error.

**C.     Plaintiff's Electronic Funds Transfers With Defendant**

11.    Plaintiff is a consumer as defined in 12 C.F.R. § 205.2(e).  In July, 2010, Plaintiff used the Guardian ATM located at 1789 Congressman Dickson Drive, Montgomery AL 36109 in order to conduct an electronic funds transfer involving the withdrawal of cash.  (*See* Exhibit A, Hart Decl., ¶ 4).  The Guardian ATMs did not have the fee notice required by 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16 as it did not have any sign affixed to it or in close proximity to it informing consumers that use of the Guardian ATMs will or may result in an ATM surcharge.  (*See* Exhibit A, Hart Decl., ¶ 5).  After this suit was filed, Defendant posted notices

on the ATMs. Plaintiff and other consumers in fact assessed a $2.00 ATM surcharge fee for withdrawing cash from the Guardian ATMs.

### III.
### GENERAL REQUIREMENTS OF RULE 23

Rule 23(a) of the Federal Rules of Civil Procedure states:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(2010).

The Supreme Court has said that the final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364 (1982).

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Subdivision (b)(3), at issue in this matter, is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The decision to grant or deny class certification lies within the sound discretion of the district court." *Giles v. Ireland*, 742 F.2d 1366, 1372 (11th Cir. 1984)). *See Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1386 (11th Cir.1998) (en banc) ("Questions concerning class certification are left to the sound discretion of the district court.") "A district court's decision whether or not to certify a class under Rule 23 of the FRCP is reviewed for abuse of discretion. As long as the district court's reasoning stays within the parameters of Rule 23's requirements for the certification of a class, the district court decision will not be disturbed." *Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir. 2003) (citations omitted).

"The Court must accept the allegations in the [Amended] Complaint as being true in considering class certification." *In Re Theragenics Corp. Securities Litigation*, 205 F.R.D. 687, 694 (N.D. Ga. 2002). "The focus thus is on the nature of Plaintiffs' claims, minimizing the need to scrutinize evidence that will be adduced to support the claims." *Anderson v. Garner*, 22 F.Supp. 2d 1379, 1382 (N.D. Ga. 1997). "In a doubtful case, it is better to allow the case to proceed as a class action." *In Re Theragenics Corp.*, 205 F.R.D. at 693.

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Gen. Tel.*

*Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982); *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 714 (5th Cir. 1973) (en banc) ("It is inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b) and the question of whether plaintiff can succeed on the merits.").

A.     **The Class Can Be Identified Based On Objective Criteria**.

Plaintiff seeks certification of the following class:

> All consumers who initiated an electronic funds transfer at the Guardian ATMs located at 1789 Congressman Dickson Drive, Montgomery AL 36109, and 402 Washington Street, Prattville, AL 36067, and were assessed a fee for withdrawing cash from the Guardian ATMs located at 1789 Congressman Dickson Drive, Montgomery AL 36109, and 402 Washington Street, Prattville, AL 36067, on or after October 7, 2009, (one year prior to the filing of the Complaint) and continuing through October 14, 2010.

Defendant avers that it placed notices in the ATMs on October 14, 2010. Rule 23 requires notice be provided by the best practical means. In the event it is not feasible to give direct actual notice to consumers, publication, internet and notice on the ATM can be used. *See Burns v. First American Bank*, 2006, WL 3754820 at *11 (N.D. Ill. Dec. 19, 2006).

## IV.
## PLAINTIFF HAS ESTABLISHED THE REQUIREMENTS OF RULE 23(a)

A.     **Numerosity**

While Rule 23 does not suggest a minimum number to satisfy the numerosity requirement, generally over forty class members is sufficient. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors"). Here, the putative class includes thousands of class members. Defendant's counsel has represented that there were over 4,000 transactions at the ATMs in which a fee was charged during the class

period as defined above.

Plaintiff must show that not only is the class of sufficient size but also that joinder of the members of the class is impracticable. Plaintiff is not required, however, to prove that joinder is impossible; rather, the plaintiff only needs to show that it would be extremely difficult or inconvenient to join all members of the class. *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676 (N.D. Ala. 2005). In making this determination, the court is allowed to "make common sense assumptions in order to find support for numerosity." *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). Here, in would be impracticable to join the thousands of class consumers that used the Guardian ATMs.

**B.      Commonality**

The case at bar has common questions of fact or law common to the class. The commonality requirement demands only that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This Rule "does not require that all the questions of law and fact raised by the dispute be common," *Cox v. American Cast Iron Pipe Co.*, *supra*, 784 F.2d at 1557, or that the common questions of law or fact "predominate" over individual issues. Common nuclei of fact are typically manifest or present where the defendant has engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).

Four overriding questions of law and fact that are common to the class are: (1) whether Defendant was at all relevant times during the class period an automated teller machine operator which imposed a fee on consumers for providing host transfer services to those consumers; (2)

10

whether Defendant is the operator of the Guardian ATMs; (3) whether Defendant complied, at all times during the class period, with the notice requirements of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16; and (4) whether Plaintiff and members of the Class are entitled to statutory damages, costs and attorney's fees for Defendant's acts and conduct.  (*See* Complaint, ¶ 45). Indeed, whether Guardian violated EFTA, and therefore, cannot collect ATM fees is the overriding, predominant question presented in this lawsuit.

### C. Typicality

The Plaintiff Patrick Hart's claims are typical of the class members.  His claim, along with the other putative class members is that the Defendant violated 15 U.S.C. § 1693(b)(d)(3). "Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

Various courts have held that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."  *Piazza*, 273 F.3d at 1351 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000).

As the Supreme Court explained in *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

457 U.S. at 157, n.13.

"Both requirements focus on whether a sufficient nexus exists between the legal claims

of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 at 1278 (11th Cir. 2000). "Traditionally, commonality refers to the group characteristics of the class as a whole [while] typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341 (11th Cir. 2001).

### D. Adequacy of Representation

The Plaintiff and his counsel satisfy the adequacy requirement. The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Therefore, a determination of the adequacy of representation includes two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *National Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 2006 WL 1663286 (N.D. Ga. 2006) (*citing Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

"The adequate representation requirement involves questions of whether Plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation, and whether Plaintiff has any interests antagonistic to the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). In this case, neither is an issue.

#### 1. Mr. Hart is an Adequate Representative.

In determining whether a class representative is adequate, the court should keep in mind the admonition of the court in *Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245 (S.D. Ga. 2005), which eloquently explained:

> Class representatives "should have a working knowledge of the case." *Buford v. H & R Block*, Inc., 168 F.R.D. 340, 353 (S.D. Ga. 1996, Moore, J.). However,

> requiring too much of class representatives "could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 at 728 (11th Cir. 1987). The "basic issue of adequate representation [is] whether there are significant antagonistic interests between the representatives and the class." *Schnorbach v. Fuqua*, 70 F.R.D. 424, 428 (S.D. Ga. 1975, Alaimo, J.). A lack of detailed factual knowledge about the case or a lack of understanding regarding the legal theories by the named plaintiffs does not preclude class certification in a complex case. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 327-28 (S.D. Fla. 1996); *Kirkpatrick* at 727-28. (Emphasis supplied).

Cooper at 258.

Here, Mr. Hart has demonstrated, through his Declaration that he has a working knowledge of the case. There are no conflicts between him and putative class members. He is an adequate class representative. (*See* Exhibit A, Hart Decl.).

### 2. Class Counsel Is Adequate.

The plaintiff's counsel satisfy the adequacy requirement. The Eleventh Circuit has adopted the following standard in interpreting the federal Rule 23(a)(4):

> We conclude . . . that . . . **where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs** unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case. To require less would permit attorneys essentially to serve as class representatives; **to require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights**.

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987) (bold and underline added).

Unquestionably, class counsel of both firms is adequate to represent the interests of the classes. The law firm of Travis, Calhoun & Conlon, P.C. enjoys an excellent reputation in the legal community. Further, the attorneys of Travis, Calhoun & Conlon, P.C. are experienced in

complex litigation and class matters, including EFTA class actions. (*See* Declaration of Eric Calhoun, Esq., attached hereto as Exhibit D).

Likewise, the firm of Deal, Cooper & Holton, PLLC also enjoys an excellent reputation in the legal community and has the expertise and resources required to vigorously pursue this matter. Attorney B. J. Wade has been AV rated for many years and has spent considerable time in his legal career working on class litigation. (*See* Declaration of B. J. Wade, Esq., attached hereto as Exhibit E).

## V.
## RULE 23(b)'s REQUIREMENTS: Predominance and Superiority

Plaintiff seeks certification of this class action under Rule 23(b)(3):

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(2010).

### A.        **Predominance**

To satisfy the predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211

F.3d 1228, 1233 (11th Cir. 2000)(quotations and citation omitted). "The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement." *Id*.

To determine whether common questions predominate, the Court must examine the cause of action asserted in the complaint on behalf of the putative class and consider what value the resolution of the class-wide issue will have in each class member's underlying cause of action. *Rutstein v. Avis*, supra, 211 F.3d, at 1234. In practical terms, the Eleventh Circuit described the test for predominance:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3) . . . . **[I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.** Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. **If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate**.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2003)(bold added).

Here, common issues predominate over individualized issues. The central overriding issue is whether the Defendant violated 15 U.S.C. § 1693(b)(d)(3). The predominating issues in this case will be the common questions identified above. It is a question for all class members whether Defendant had compliant notices posted on its ATM in the date that the class member where charged fees. It is a common predominating question whether Defendant can lawfully charge fees in the absence of the required notice. Because EFTA is a strict liability statute, no

15

individual questions are presented.  The question of statutory damages is also a predominating common question.

### B. Superiority

The superiority requirement is met when the plaintiff demonstrates that a class action is the superior method for adjudication of the controversy.  The superiority requirement is met when the plaintiff demonstrates that there is a standardized conduct by a defendant to the putative class members and a common nucleus of operative facts is present.  *See Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *8 (N.D. Ill. 2008).  The Eleventh Circuit has set out four factors to be considered in determining whether the class action is the superior method:

> (1) the interest of members of the class in individually controlling their claim, (2) other litigation already commenced by members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.

*Klay v. Humana, Inc.,* 382 F.3d, at 1269.

Here, no other class members have an interest superior to plaintiff in controlling the litigation.  Second, Plaintiff is not aware of any other pending litigation involving the Guardian ATMs.  Third, it is desirable to concentrate the litigation in this forum, which the proper venue for this litigation.

Finally, this case presents no particular management difficulties not found in any class action case.  Respectfully, the superiority requirement is here.

## VI. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion for Class certification, Plaintiff requests that the Court certify the class as set forth herein and also appoint

Eric Calhoun and B. J. Wade of the law firms of Travis, Calhoun & Conlon, P.C. and Deal, Cooper & Holton, PLLC, respectively, as class counsel.

Dated: May 12, 2011	Respectfully submitted,

**TRAVIS, CALHOUN & CONLON, P.C.**

*/s/ Eric G. Calhoun*
ERIC G. CALHOUN
Texas Bar No. 03638800
1000 Providence Towers East
5001 Spring Valley Road
Dallas, Texas  75244
(972) 934-4100 Telephone
(972) 934-4101 Facsimile
eric@travislaw.com

**ATTORNEY FOR PLAINTIFF AND PROPOSED CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of May, 2011, that the below counsel of record will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court. If said counsel of record has not registered for electronic notice, a copy will be served via first class U.S. mail and facsimile transmission:

Chad W. Bryan, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street
Montgomery, AL  36104
Tel:  334-241-8034
Fax: 334-241-8234
e-mail:  cwb@chlaw.com

*Attorney for Guardian Credit Union*

Nicholas Cole Hughes
6706 Taylor Circle
Montgomery, AL 36117
Tel:  334-279-0088
Fax:  334-279-8830
e-mail:  nhughes465@aol.com

*Attorney for Patrick Andrew Hart*

B. J. Wade
DEAL, COOPER & HOLTON, PLLC
26 N. Second Street
Memphis, TN  38103
Tel:  (901) 527-4673
Fax: (901) 521-0940
e-mail:  bwade@gewwlaw.com

*Attorney for Patrick Andrew Hart*

Matthew Bruce Alfreds
445 S. Decatur Street
Montgomery, AL 36103
Tel:  334-264-1498
Fax:  334-264-1468
e-mail:  mbalfreds@bellsouth.net

*Attorney for Patrick Andrew Hart*

*/s/ Eric G. Calhoun*
ERIC G. CALHOUN