Westlaw.

Page 1

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Thomas BURNS and Mark Larsen, individually and on behalf of all others similarly situated, Plaintiffs,
v.
FIRST AMERICAN BANK, Defendant.
**No. 04 C 7682.**

Dec. 19, 2006.

Brian Lewis Bromberg, Bromberg Law Office, P.C., New York, NY, Allison Amy Krumhorn, Lance A. Raphael, Stacy Michelle Bardo, Chicago, IL, for Plaintiffs.

Paul F. Markoff, Karl G. Leinberger, Thomas F. Karaba, Crowley, Barrett & Karaba, Ltd., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

VIRGINIA M. KENDALL, United States Northern District of Illinois Judge.

**\*1** Plaintiffs Thomas Burns and Mark Larsen ("Plaintiffs") bring this action against First American Bank ("Defendant" or "First American") alleging violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.,* and Regulation E of 12 C.F.R. 205 *et seq.* EFTA requires an Automatic Teller Machine ("ATM") operator to provide notice to consumers when a fee is being imposed and the amount of any such fee. An ATM operator must provide such notice on the machine itself and on the display screen before the consumer is irrevocably committed to completing the transaction. Defendant is an ATM operator, Plaintiffs are consumers that used two of Defendant's ATMs. Plaintiffs allege that the ATMs did not contain the required notice.

Plaintiffs move to certify a class of consumers seeking statutory damages for Defendant's alleged non-compliance with EFTA. Because Plaintiffs have met their burden under Federal Rule of Civil Procedure 23, the Court certifies a class consisting of all persons nationally who, from November 28, 2003 to December 1, 2004 ("the Class Period"): (1) were charged a "transaction fee" for the use of ATMs (Nos. S 1A5260 and S 1A5261) located in the Chicago Hilton and Towers at 720 South Michigan Avenue in Chicago, Illinois; (2) in an amount different from the "transaction fee" disclosed on the fee notice posted on the outside of those ATMs.

### Background

On August 16, 2004, Plaintiff Larsen withdrew money from ATM number S 1A5261 located in the lobby of the Chicago Hilton and Towers Hotel. (Compl.¶ 22.) On November 23, 2004, Plaintiff Burns withdrew money from ATM number S1A5260 also located in the lobby of the Chicago Hilton and Towers Hotel. (Compl.¶ 16.) First American owned and operated ATMs S1A5260 and S1A5261. (Compl.¶¶ 17, 23.) Located on each machine was a notice that provided:

*Fee Notice*

> The owner of the terminal, First American Bank, charges a fee to U.S. cardholders of $2.00 for withdrawing cash if the transaction is performed using a card that was not issued by First American Bank. This charge is in addition to any fees that may be assessed by your financial institution. This additional charge will be added to the transaction amount and deducted from your account.

(Compl.¶¶ 18, 24.) Prior to completing their transactions, Plaintiffs were prompted on the screen with the notice that:

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

> THE AMOUNT CHARGED TO YOUR ACCOUNT WILL INCLUDE A FEE OF $2.50
>
> IN ADDITION TO THE REQUESTED AMOUNT. THIS IS IN ADDITION TO ANY FEE CHARGED BY YOUR FINANCIAL INSTITUTION.
>
> DO YOU WISH TO CONTINUE?
>
> YES >
>
> NO >

(Plaintiffs' Reply Memorandum in Further Support of Plaintiffs' Motion for Class Certification, Ex. 2.) Plaintiffs were charged $2.50 for withdrawing money from ATMs S1A5260 and S1A5261. (Compl.¶¶ 20-21, 26.) Other consumers who used ATMs S1A5260 and S1A5261 during the Class Period also were charged $2.50. (Compl.¶ 31.)

### The Electronic Funds Transfer Act

**\*2** Congress passed EFTA as an amendment to the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq.[FN1] See Pub.L. No. 95-630, 92 Stat. 3641, 3728 (1978). EFTA's purpose is to protect individual consumer rights by providing a "basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). Plaintiffs assert their claims under § 1693b(d)(3), which prohibits an ATM operator from imposing a fee on consumers without first providing notice:

> FN1. The CCPA houses other consumer credit protection statutes as well, including the Truth in Lending Act, 15 U.S.C. §§ 1601-1667e; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681t; and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o. See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1328 n. 9 (7th Cir.1997). Given the common purpose underlying each statute and the often similar language, courts find case law interpreting one act under the CCPA umbrella as persuasive in interpreting the other acts. See Johnson v. W. Suburban Bank, 225 F.3d 366, 379 (3d Cir.2000) (finding identical class action language in TILA and EFTA to have same meaning because "we do not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes").

(3) Fee disclosures at automated teller machine

(A) In general

The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of-

(i) the fact that a fee is imposed by such operator for providing the service; and

(ii) the amount of any such fee.

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

(ii) On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless-

(i) the consumer receives such notice in accordance with subparagraph (B); and

(ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

15 U.S.C. § 1693b(d)(3). For purposes of this action, Regulation E, which implements EFTA, contains notice requirements that are substantively the same as the notice requirements in § 1693b(d)(3). See 12 C.F.R. § 205.16(b), (c), (e); 66 Fed.Reg. 13409, 13410 ("Regulation E").

**Standard of Review**

This Court must conduct "a rigorous analysis" to determine whether the requirements for certification in Rule 23 are met. See *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir.2003). In conducting this rigorous analysis, the Court "make[s] whatever factual and legal inquiries are necessary under Rule 23" even if they involve "a preliminary inquiry into the merits." *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir.2001); *see Falcon,* 457 U.S. at 160 ("[S]ometimes it may be necessary for the court to probe beyond the pleadings before coming to rest on the certification question"). While this preliminary inquiry into the merits allows the Court to understand the elements of the parties' claims and defenses and the nature of the evidence that must be presented to adjudicate them, the Court will not assess the ultimate merits of those claims. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (class certification considerations are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); *Humphrey v. International Paper,* 2003 WL 22111093, *3 (N.D.Ill.2003) (describing the "preliminary inquiry into the merits" as focused on "not the substantive strength or weakness of the plaintiffs' claims but rather whether the path that will need to be taken to decide the merits renders the case suitable for class treatment").

**DISCUSSION**

**\*3** Plaintiffs claim that Defendant is strictly liable for statutory damages under EFTA because Defendant posted a fee notice on its ATM machines that contradicted the on screen fee notice and did not represent the actual fee that class members were charged. Plaintiffs seek to pursue their claim on behalf of all persons who, from November 28, 2003 to December 1, 2004, were charged a "transaction fee" for the use of ATMs S 1A5260 and S 1A5261 in an amount different from the "transaction fee" disclosed on the fee notice posted on the outside of those ATMs.

Plaintiffs may pursue their claim on behalf of the proposed class only if they can establish that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the repres-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

entative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Assuming Plaintiffs meet this initial burden, they also must show that the requirements for one of the subsections of Rule 23(b) is met. Plaintiffs have moved to certify their class under Rule 23(b) (3), which permits a class to seek money damages. Rule 23(b)(3) adds the requirements that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b). Finally, in addition to the textual requirements of Rule 23, courts have implied two other prerequisites for class certification: (1) that the class be sufficiently defined; and (2) that the named class representatives are members of the proposed class.

**I. Implicit Prerequisites to Class Certification**

The "implicit prerequisites to class certification" are a sufficiently defined class and a named class representative that falls within that class definition. *See Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 580 (N.D.Ill.2005); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 6 (N.D.Ill.1977). A sufficient class definition is "precise, objective and presently ascertainable." *Rozema v. Marshfield Clinic,* 174 F.R.D. 425, 431 (W.D.Wis.1997), citing *Manual for Complex Litigation* § 30.14; *see Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir.1980) ("the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable"). The prerequisite that a class representative fall within the class definition is akin to a standing requirement. *See East Texas Motor Freight System v. Rodriquez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class member").

Both prerequisites make perfect sense and are logically consistent with Rule 23. A proper class definition is essential because it "identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b) (3) action." *Gustafson v. Polk County, Wis.,* 226 F.R.D. 601, 607 (W.D.Wis.2005), citing *Manual for Complex Litigation* § 30.14. Standing is critical because the class claims rise and fall with the claims of the class representative. In this regard, standing both ensures a class representative that will zealously pursue the class claims and, more importantly, it protects against the situation where all of the class claims fail because the class representative cannot establish his own claim to relief. *See Antenor v. D & S Farms,* 39 F.Supp.2d 1372, 1377 (S.D.Fla.1999) ( "Defendants' request for summary judgment against the class as a whole will rise or fall depending on the class representative's proof of standing").

**\*4** Both prerequisites also are largely superfluous. When a class definition is not precise or objective, Rule 23's requirements of commonality, typicality, predominance and superiority cannot be met. *See, e.g., Oshana,* 225 F.R.D. at 580 (finding class definition insufficient and proceeding to find that Rule 23's requirements were not met); *Guillory v. American Tobacco Co.,* 2001 WL 290603, \*2 (N.D.Ill.2001) (same). Without a sufficient definition, no common bond will tie the class members together and individual issues related to membership in the class, such as a class member's subjective state of mind, reliance or damages, will overwhelm any common issues. *See Simer v. Rios,* 661 F.2d 655, 659 (7th Cir.1981) (refusing to certify a class of persons who were "discouraged" from applying for government assistance because individual questions regarding each member's state of mind would predominate). Similarly, if a Court cannot determine whether a particular individual is a member of the proposed class based on the class definition, the class will be unmanageable and not satisfy the superiority prong of Rule 23(b)(3). *See Zapka v. Coca-Cola Co.,* 2000 WL 1644539, \*4 (N.D.Ill.2000) ("even if this Court were to utilize

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

its broad discretionary powers and attempt to redefine the membership of the class, such efforts would be futile because ... plaintiff's claim is unmanageable as a class action").

The implicit standing prerequisite duplicates the work done by Rule 23(a). *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (describing Rule 23 as "statutory standing"). As the Seventh Circuit has noted "[i]t is not clear whether the source of this implied requirement is the express 'common issue of law or fact' requirement of Rule 23(a)(2) or more simply something inherent in the very notion of a 'class.' " *Alliance to End Repression v. Rochford,* 565 F.2d 975, 978 (7th Cir.1977). Regardless of its origin, a class representative who lacks standing to pursue the class claims will not satisfy the typicality and adequacy prongs of Rule 23(a). *See Thomas v. City of Chicago,* 1984 WL 946, *8 (N.D.Ill.1984) ("Both the standing doctrine and Rule 23(a) focus on the nexus between the named plaintiff and the class he or she purports to represent"); *McGarvey v. Citibank (South Dakota) N.A.,* 1995 WL 404866, *4 (N.D.Ill.1995) ("Courts faced with an overbroad class definition may deny certification for want of typicality"); *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 499 (7th Cir.1972) ("A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated").

Whatever the necessity of these implicit prerequisites, Plaintiffs' class definition satisfies them. Plaintiffs define their class as all persons who, from November 28, 2003 to December 1, 2004, were charged a "transaction fee" for the use of ATMs (Nos. S1A5260 and S1A5261) located in the Chicago Hilton and Towers at 720 South Michigan Avenue in Chicago, Illinois in an amount different from the "transaction fee" disclosed on the fee notice posted on the outside of those ATMs. Plaintiffs allege that all persons who meet this class definition would be entitled to statutory damages for Defendant's violation of the ATM surcharge notice requirements set forth in EFTA § 1693b(d)(3).

**\*5** Defendant does not challenge whether Plaintiffs would be members of the class, but rather objects to the class definition itself as flawed.[FN2] Defendant argues that to state a claim each class member must prove that he saw the notice posted on the machine and that he was confused about the amount of the fee that he would be charged. As such, Defendant argues that the class necessarily must be defined by reference to a class member's state of mind-actual confusion. Without a state-of-mind requirement, the class will be overbroad and encompass persons that have no claim to relief. *See Oshana,* 225 F.R.D. at 580 (denying class certification where "the proposed class definition [wa]s overly inclusive and encompasse[d] millions of potential members without any identifiable basis for standing"). Moreover, as Defendants point out, even a class defined with reference to a class member's state of mind will not be sufficiently definite. *See Alliance,* 565 F.2d at 978 ("In those cases in which class certification has been denied on account of indefiniteness, the primary defect in the class definition has been that membership in the class was contingent on the state of mind of the prospective class members"). Plaintiffs do not contest Defendant's latter two points: that a class definition cannot be overbroad or based on a class member's state of mind. Instead, Plaintiffs attack Defendant's chain of logic at its starting point-that a class member cannot state a claim under EFTA without proving actual confusion. Plaintiffs argue that EFTA imposes strict liability for alleged violations and the recovery of statutory damages does not require proof of actual confusion.

> FN2. On its face, the class definition is based on objective, rather than indefinite or vague, criteria. *See, e.g., In re Copper Antitrust Litigation,* 196 F.R.D. 348, 358 (W.D.Wis.2000) (denying class certification where definition included ambiguous term "copper or metals dealer"); *Diehl v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

*Twin Disc, Inc.,* 1995 WL 330637, *2 (N.D.Ill.1995) (striking "should be" from proposed definition of "all other eligible participants who are *or should be* participants or beneficiaries").

Defendant contends first that judicial estoppel bars Plaintiffs from arguing that EFTA does not require proof of actual confusion. In denying Defendant's Motion to Dismiss, this Court opined:

> Plaintiffs have alleged that because they received two contradictory disclosure statements that the statements were improper under EFTA. Whether or not FAB's notices violate EFTA is a factual issue and though the claim may eventually fail on the facts, 'assessing factual support for a suit is not the office of Rule 12(b)(6).' Because Plaintiffs have raised this question of fact, they should be entitled to present evidence to establish that such confusion violates 15 U.S.C. § 1693.

Judicial estoppel is an equitable doctrine that prevents a party that prevails on one legal or factual ground in a lawsuit from later repudiating that ground in further litigation based on the same underlying facts. See *Moriarty v. Svec,* 233 F.3d 955, 962 (7th Cir.2000). First, Plaintiff's position is not "clearly inconsistent with the earlier position." *United States v. Christian,* 342 F.3d 744, 747 (7th Cir.2003). Plaintiff is not arguing now that confusion cannot be the basis for an EFTA claim, only that confusion is not necessary to prove a claim for statutory damages. Second, Defendant has not provided any case where judicial estoppel applied to a plaintiff's arguments in response to a motion to dismiss. Indeed, unlike state court, a plaintiff in federal court does not plead a cause of action under a particular legal theory, but instead states a claim for relief. See *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). It would be inconsistent with the federal pleading standards and the preliminary nature of a motion to dismiss to say that Plaintiffs "prevailed" on a particular ground. See *Alper v. Altheimer & Gray,* 2002 WL 31133287, *34 (N.D.Ill.2002) (refusing to find that "surviving a motion to dismiss in one proceeding constituted a victory sufficient to trigger judicial estoppel in a second"). Accordingly, judicial estoppel does not apply here. That brings the Court to the paramount question for purposes of class certification: Does EFTA require a class member to prove that Defendant's fee notice on its machine confused, misled or deceived him and that he suffered actual damages as a result?[FN3]

> FN3. Although the parties conflate the issues underlying this question, strict liability, plaintiff's state of mind and actual damages are separate concepts. Strict liability defines the requisite scienter for a defendant's conduct; plaintiff's state of mind deals with proof that the plaintiff was confused, misled or deceived by a defendant's conduct, comparable to common law reliance; and actual damages are the injury that a plaintiff suffered as a result of a defendant's conduct, regardless of defendant's intent or plaintiff's state of mind.

**\*6** EFTA is a strict liability statute. See *Bisbey v. D.C. National Bank,* 793 F.2d 315, 318-19 (D.C.Cir.1986). Section 1693b(d)(3) prohibits an ATM operator from charging a fee unless it provides notice of its fee on the machine and on the screen, period, no mention of a necessary scienter. Section 1693m(a), in turn, makes an ATM operator "who fails to comply with any provision" of EFTA liable; again, no necessary scienter. Congress could have modified the phrase "fails to comply" with a state of mind word such as intentionally, knowingly or recklessly, but did not. In questioning the strict liability nature of EFTA, one court noted the exception to liability in § 1693m(c). See *Marina Bartashnik v. Bridgeview Bancorp, Inc.,* 2005 WL 3470315, *3 (N.D.Ill.2005) ("The fact that the statute provides exceptions for liability is inconsistent with strict liability"). Section 1693m(c) provides that "a person may not be held liable for any action brought under this section ... if the person shows by

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." A statute can provide a defense to liability but still allow a plaintiff to make out his claim based upon strict liability. *See Nat'l Accident Ins. Underwriters, Inc. v. Citibank F.S.B.,* 243 F.Supp.2d 769, 771 (N.D.Ill.2003) ("[A]ll 'strict liability' means is 'liability without fault.' ... There is nothing to suggest that it means an absence or elimination of any possible affirmative defenses"). A defense shifts the burden of proof from the plaintiff to the defendant. In *Randolph v. IMBS, Inc.,* 368 F.3d 726, 730 (7th Cir.2004), the Seventh Circuit held that despite an identical bona fide error defense in 15 U.S.C. § 1692k(c) a debt collector was strictly liable for making false claims under § 1692e(2)(A). Accordingly, Defendant may be held strictly liable for any non-compliance with the notice requirements in § 1693b(d)(3). The next question is: liable to whom?

The civil liability provisions of EFTA allow for both actual and statutory damages. *See* 15 U.S.C. § 1693m. Plaintiffs seek only statutory damages pursuant to § 1693b(a)(2)(B). A plaintiff seeking statutory damages need not prove that he relied upon, was confused by or misled by a defendant's representations. For example, a plaintiff that receives a collection letter that violates the FDCPA does not need to prove that was he misled or even that he read the collection letter to be entitled to statutory damages. *See Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.1997) (statutory damages are "a penalty that does not depend on proof that the recipient of the letter was misled"). By analogy, a person that used Defendant's ATM would not need to prove that he was confused or even that he saw the fee notice on the outside of the machine to be entitled to statutory damages. Nor must a plaintiff seeking statutory damages prove that he suffered actual damages as a result of a defendant's conduct. *See Bisbey,* 793 F.2d at 318-19 (holding that EFTA does not require proof of actual injury for statutory damages); *Keele v. Wexler,* 149 F.3d 589, 593 (7th Cir.1998) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages"); *Murray v. New Cingular Wireless Services, Inc.,* 232 F.R.D. 295, 302 (N.D.Ill.2005) (under FCRA, "a plaintiff does not have to prove actual injury or harm in order to get statutory damages"). Instead, for a plaintiff seeking statutory damages, "[a]ll that is required is proof that the statute was violated." *Bartlett,* 128 F.3d at 499. Thus, EFTA allows any person that was charged a fee for using Defendant's ATMs during the Class Period to seek statutory damages for Defendant's alleged failure to comply with the notice requirements of § 1693b(d)(3) regardless of confusion or actual damages.[FN4] As such, Plaintiffs' class is sufficiently defined.

> [FN4]. Plaintiffs seek to represent a more limited class of persons who paid a fee in an amount different from the fee disclosed on the fee notice posted on the outside of the ATMs. The Court will not upset that choice and will certify the class as requested. *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 341 (7th Cir.1997) ("[W]e know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes").

**II. Rule 23(a) Requirements**

**\*7** Rule 23(a) lists the requirements that must be met for any class certified under Rule 23: numerosity, commonality, typicality and adequacy. Fed.R.Civ.P. 23(a). These requirements examine the similarities among the facts and law relevant to the claims of the named representatives and each class member. And while the requirements of Rule 23(a) tend to overlap, each prong must be satisfied before a class may be certified. *See Falcon,* 457 U.S. at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable."). Defendant challenges each Rule 23 requirement

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

primarily on the ground that an EFTA claim requires proof of actual confusion and damages by each class member. Having resolved this paramount question in the context of the class definition, the remaining Rule 23 requirements for certification fall like dominos.

### A. Rule 23(a)(1)-Numerosity

A class may be certified only if it so large that joinder is impracticable. Fed.R.Civ.P. 23(a). Whether joinder is practicable may depend on several factors: "(1) the class size; (2) the geographic dispersion of class members; (3) the type of relief sought by the class; and (4) the practicability of relitigating the common core issue." *Radmanovich v. Combined Ins. Co. of America,* 216 F.R.D. 424, 431 (N.D.Ill.2003). In terms of numbers, forty often is identified as the number sufficient, but not necessary, to satisfy Rule 23(a). *See Swanson v. American Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969). During the Class Period, there were 46,292 transactions at ATMs S 1A5260 and S 1A5261. (Defendant's Sur-Reply Memorandum Opposition to Plaintiffs' Amended Motion for Class Certification, Exhibit 5, ¶ 10.) Even assuming that many of the transactions involved repeat users, joinder of so large of a number of plaintiffs would be impracticable.

### B. Rule 23(a)(2)-Commonality

The Court next must determine that all class members will share a common question of law or fact. Fed.R.Civ.P. 23(a)(2). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). Such a common nucleus of operative facts can arise when each class member's claim will depend on the same conduct by the defendants. *See Keele,* 149 F.3d at 594. Once a common nucleus of facts is identified, commonality will not be upset by "factual variations among class members' grievances." *Id.,* citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980).

The proposed class is based on a common nucleus of operative facts-that is, Defendant charged each class member $2.50 for using ATMs S 1A5260 and S 1A5261 during the Class Period. Class members also share a common interest in the question of whether Defendant's fee notices violated EFTA. Because class members share common questions of law and fact, the commonality prong of Rule 23(a) is met.

### C. Rule 23(a)(3)-Typicality

**\*8** The Court now turns to the remaining prongs of Rule 23, prongs which compare the claims of the named plaintiffs to the claims of the putative class as a whole. A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Similar to the commonality analysis, certain factual differences may be excused as long as the named representative's claims are based on the same course of conduct as the class as a whole and the same legal theory. *Id.* at 232-33; *Tidwell v. Schweiker,* 677 F.2d 560, 586 (7th Cir.1982).

The named plaintiffs have claims typical of the class. Both putative class representatives allege that they used either ATM S 1A5260 or S 1A5261 during the Class Period and that they were charged a fee different from the transaction fee disclosed on the fee notice posted on the outside of the ATM-the facts defining membership in the class. (Compl.¶¶ 16, 20-22, 26.) The class representatives, like the class as a whole, base their claims on the theory that Defendant is liable for statutory damages because it posted a fee notice on the ATM machines that contradicted the on screen fee notice and did not represent the actual fee that class members were charged. Finally, since actual confusion and dam-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

ages are not required for a plaintiff to seek statutory damages under EFTA, there is no concern that the class representatives are atypical because they never saw or were confused by Defendant's fee notice on the machine. Accordingly, Rule 23(a)'s typicality prong is met.

**D. Rule 23(a)(4)-Adequacy of Representation**

The last requirement of Rule 23(a) is that the named plaintiffs will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The adequacy standard has two distinct components. First, a class representative must have a sufficient stake in the outcome to ensure zealous advocacy and must not have claims antagonistic to or conflicting with the claims of other class members. *See Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977). Second, counsel for named plaintiffs must be experienced, qualified, and generally able to conduct the litigation on behalf of the class. *See id.*

Defendant does not challenge the qualifications of class counsel. As to the adequacy of the class representatives themselves, Defendants raise the same objections regarding the individualized circumstances of confusion that they raised in response to the commonality and typicality prongs. Defendant though has not shown any way in which the claims of the named plaintiffs are antagonistic to the claims of other class members. While the separate prongs do overlap, the primary focus of the adequacy inquiry is on potentially conflicting interests between the named plaintiffs and the remainder of the class.[FN5] *See Rosario,* 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims"). Because the class representatives have the same stake in the outcome of this action as other class members and because Plaintiffs have proved that their claims are not antagonistic to or conflicting with the claims of other class members, the named class plaintiffs will fairly and adequately represent the class.

FN5. "The adequacy of representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotations omitted).

**III. Rule 23(b)(3) Requirements**

**\*9** In addition to satisfying the four requirements in Rule 23(a), a class also must fall within one of the Rule 23(b) categories. *See Payton v. County of Kane,* 308 F.3d 673, 680 (7th Cir.2002). Plaintiffs seek to recover a judgment against Defendant for statutory damages. Rule 23(b)(3) sets forth the requirements for a class seeking monetary relief. The two overarching requirements for a Rule 23(b)(3) class are that common issues predominate and that a class action is the superior method for resolving the controversy. Fed.R.Civ.P. 23(b)(3).

**A. Predominance**

While this Court found the commonality requirement met because of the common nucleus of facts surrounding each class member's claims, "the predominance criterion is far more demanding." *Amchem,* 521 U.S. at 623-24. Predominance requires not only that common questions of law or fact exist, but that they "predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).

The predominance inquiry begins with an examination of the substantive elements of the class claims and the defenses raised. *See Simer,* 661 F.2d at 672. As to each claim or defense, the Court must exam-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

ine rigorously the proof required to substantiate the class allegations and the form it will take at trial. *Id.* There is no exact test for predominance. On one side, the existence of individual issues does not automatically defeat certification. *Id.* Rule 23(b)(3) 's language itself requiring predominance assumes that a certain number of individual issues may be present in a class action. On the other side, a class action will not serve its intended purpose if it degenerates into separate trials on almost all elements of the class claims. *Id.* In between these certain guideposts, the Court must exercise its sound discretion to determine whether issues common to the class predominate over issues individual to each class member. *See Retired Chicago Police,* 7 F.3d at 596. A rigorous analysis of the claims, defenses and evidence presented in this case shows that common questions of law and fact predominate over individual issues.

Plaintiffs seek statutory damages for each class member based on Defendant's alleged violation of EFTA. A claim for statutory damages under EFTA does not require each class member to prove that he saw the notice on the machine, was confused by the notice or would not have proceeded with the transaction had he been aware that the actual charge would be $2.50. Each class member's claim requires proof only that EFTA was violated. *See Randolph,* 368 F.3d at 730; *Bartlett,* 128 F.3d at 499. Plaintiffs claim that Defendant violated the notice provisions of EFTA when it posted a fee notice on its ATM machines that contradicted the on screen fee notice and did not represent the actual fee that class members were charged. Whatever the ultimate merits of this claim, it will be decided predominately, if not entirely, based on common evidence of Defendant's conduct. *See Payton v. County of Kane,* 308 F.3d 673, 677 (7th Cir.2002) ("[A] determination of the propriety of class certification should not turn on likelihood of success on the merits"). Likewise, any defense raised by Defendant under § 1693m(c) will depend on common issues involving Defendant's intent and its maintenance of procedures reasonably adapted to avoid a violation. Accordingly, questions common to the class predominate over any questions affecting only individual members. *See Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 953 (7th Cir.2006) (finding class treatment appropriate for a proposed class of individuals with FCRA claims where there is no proof of actual harm and whose members are seeking statutory and not actual damages); *Hernandez v. Midland Credit Management, Inc.,* 236 F.R.D. 406, 412 (N.D.Ill.2006) (certifying class of debtors to whom defendant sent letter); *Jackson v. National Action Financial Services, Inc.,* 227 F.R.D. 284, 288 (N.D.Ill.2005) (same).

**B. Superiority**

**\*10** A class action should proceed only if it is superior to other methods for adjudicating the claims of the class. Considerations relevant to the superiority of the class action device include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

Defendant first argues that the class will be unmanageable because of the need to individually resolve issues related to a class member's confusion over the fee notice. As resolved before, such individual answers are not necessary for each class member to establish his claim. Defendant next argues that serious obstacles are inherent in the process of trying to identify class members and provide notice to them. And where there is no feasible and cost-effective method of identifying class members and providing notice to them, the class action mechanism is not the superior method of handling this case. Plaintiffs respond to these concerns with an affidavit from Anya Verkhovskaya, a consultant with experience in administering class notice and settlements.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

Neither party cites any case law addressing this issue. Bearing in mind that de minimus recovery should not bar certification of a class and that Rule 23(c)(2) entitles members of the class to the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," this Court finds that the benefits of resolving this case as a class action outweigh any manageability concerns.

An individual plaintiff may seek to recover "any actual damage sustained by such a consumer" and statutory damages in "an amount not less than $100 nor greater than $1,000." 15 U.S.C. § 1693m(a) (1), (2)(A). EFTA allows named plaintiffs to recover the same damages, and provides that recovery for the other class members "in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." 15 U.S.C. § 1693m(a)(2)(B). Because Defendant's net worth exceeds $50,000,000, the class recovery would be capped at $500,000. EFTA also allows for the recovery of attorneys' fees and costs. 15 U.S.C. § 1693m(a)(3).

Assuming that Defendant's violation somehow justifies statutory damages at the maximum amount of $500,000, this figure would equate to $10.80 for each of the 46,292 transactions.[FN6] Cases involving such de minimus recovery are particularly appropriate for class treatment. *See Mace,* 109 F.3d at 344-345 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). This rule generally applies even where a statute allows for individual recoveries of up to $1000 and attorneys' fees. *Id.* EFTA itself provides that a class action may proceed even if would result in de minimus recovery for class members: "as to each member of the class no minimum recovery shall be applicable." 15 U.S.C. 1693m(a)(2)(B); *see Mace,* 109 F.3d at 345 (citing a similar provision in the FDCPA); *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 953 (7th Cir.2006) (class certification should not be denied because named plaintiff seeks only statutory and not actual damages on behalf of the class).

> FN6. This figure also assumes that each transaction involved a fee an amount different from the fee disclosed on the fee notice posted on the outside of the ATMs. From the page of the transaction log attached as Exhibit 4 to Plaintiff's Reply, some transactions may have incurred a fee of only $2.00. But for purposes of the current discussion, a rough estimate of each class member's potential recovery is sufficient.

*11 The difficulties in identifying and notifying class members is a proper consideration for determining the manageability of a class action.[FN7] *See Simer,* 661 F.2d at 677-78 ("The cost of notifying the class members, attempted after the difficult task of identifying these individuals, was a proper factor to consider in denying class certification"). Ayna Verkhovskaya, a Senior Vice President of A.B. Data, Ltd.'s Class Action Administrative Division, submitted an affidavit in response to this issue. Ayna Verkhovskaya has administered numerous class notice or settlement proceedings. The affidavit of Anya Verkhovskaya postulates that it will be possible to identify, locate and notify class members using Defendant's transaction logs from ATMsS 1A5260 and S1A5261. The transaction logs contain the customer's debit or credit card number, also known as a Personal Account Number ("PAN"), as well as the fee charged. The first six digits of any debit or credit card number is the Bank Identification Number ("BIN"). A BIN identifies the bank or institution that issued the card and the ATM network that the cards belong to. After organizing the ATM transactions by their BINs, the information then could be transmitted to each financial institution. It would be up to the financial institutions themselves to identify or notify their cus-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

tomers using the remainder of the PAN. Anya Verkhovskaya also offers the possibility of notifying class members through a process called "Reverse Interchange." Reverse Interchange would place a transaction line on a card member's account with a message "Important Notice. Call 800 000-0000." In addition to using the transaction logs and PANs, Anya Verkhovskaya discusses more conventional methods of notifying class members such as posters on the ATMs and notices in media.

> FN7. The term "identifying" as used here relates to locating the individual class members, not to determining whether the individual is a member of the class. Typically, courts that deny class certification because it will be difficult to "identify" the class members are using the term in the latter sense. *See, e.g.,* Oshana, 225 F.R.D. at 580.

Defendant challenges Anya Verkhovskaya's qualifications, pointing out that she has no experience with the ATM industry and has not tried to implement either of her proposals with individual notice. Defendant also challenges the feasability and cost-efficiency of Anya Verkhovskaya's proposals, partly through the affidavit of Edwardo Monteagudo. Edwardo Monteagudo has 36 years of experience in the financial institutions industry. His affidavit states that, from his experience and research, no comprehensive list of BINs exists. The affidavit also explains why he believes the Reverse Interchange process is not possible or cost-effective.

Rule 23(c)(2) entitles class members to individual notice when they "can be identified through reasonable effort." If the methods proposed in Anya Verkhovskaya's affidavit for providing individual notice are not reasonable and no other reasonable method can be found, certain forms of general public notice are available. The Court does not pretend that any notice plan will encourage a large number of individuals to come forward and claim what likely will be a minimal award. *See* Sanders v. Jackson, 209 F.3d 998, 1003 (7th Cir.2000) (plaintiffs "who are not claiming actual damages cannot reasonably expect large awards for what are technical and de minimis violations of the Act"). On the other hand, it is even more unlikely that class members will file individual actions if the proposed class is not certified: "But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the [statute]'s objectives." Mace, 109 F.3d at 344. Indeed, no such individual actions have been filed in the more than two years since the labels were removed. Moreover, even if a large number of claims were not filed, compensating class members is only one consideration. Statutory damages serve a punitive, as well as compensatory, purpose. *See* Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 352-53, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ("Statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment"). Worst case scenario, the statutory damages are distributed through a cy pres recovery scheme. *See* id. at 345 ("Cy pres, or fluid, recovery is a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class)").

**\*12** In the end, "[d]etermining whether a class action satisfies manageability concerns involves a practical, on-the-ground assessment of whether the proposed efficiencies from a class action will outweigh the administrative problems and inefficiencies likely to ensue." Hamilton v. O'Connor Chevrolet, Inc., 2006 WL 1697171, \*13 (N.D.Ill.2006). Adjudicating the class claims here will take no more effort than it would to adjudicate the claims of Plaintiffs alone. In contrast to a case like *Simer,* for example, this case is not plagued with individu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)
**(Cite as: 2006 WL 3754820 (N.D.Ill.))**

al issues regarding a class member's state of mind or an amorphous class. *See Simer,* 661 F.3d at 673-74 (involving notice to more than 1 million potential class members). Whether pursued individually or as a class, the predominating, perhaps only, question will be whether Defendant violated EFTA in posting a fee notice on its ATM machines that contradicted the on screen fee notice and did not represent the actual fee that class members were charged. Weighing the various efficiencies against the potential problems, this Court finds that a class action is the superior method for resolving this controversy.

## CONCLUSION AND ORDER

Because the class meet the requirements of Rule 23(a) and (b) (3), the Court certifies them to pursue appropriate statutory relief and Plaintiffs' counsel are appointed as counsel for the class under Rule 23(g). Wherefore, Plaintiffs' Motion for Class Certification is granted.

So ordered.

N.D.Ill.,2006.
Burns v. First American Bank
Not Reported in F.Supp.2d, 2006 WL 3754820 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.